**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA SIMS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. ED CV 11-0662 JCG <br><br> **MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION AND SUMMARY**

On April 27, 2011, plaintiff Laura Sims ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income ("SSI"). [Docket No. 1.]

On October 28, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 11, 12.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, the

Administrative Law Judge ("ALJ") improperly discounted Plaintiff's subjective complaints. The Court thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 42 years old on the date of her most recent administrative hearing, has completed two years of college. (*See* Administrative Record ("AR") at 69, 81, 163, 171, 206.)

On July 26, 2007, Plaintiff filed for SSI and DIB, alleging that she has been disabled since November 6, 2005 due to severe back problems, impairments in her left knee and foot, neck, arm, and shoulder pain, swelling in her hands, and a hernia. (*See* AR at 120, 126, 163, 171, 199.)

On July 10, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (AR at 69-115.) The ALJ also heard testimony from David Rinehart, a vocational expert ("VE"). (*Id.*)

On December 18, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 29-41.) Applying the familiar five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (*Id.* at 31.)

At step two, the ALJ found that Plaintiff suffers from severe impairments of "disorder of the left knee and lumbar spine, a depressive disorder, and fibromyalgia." (AR at 31 (bold omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1] (AR at

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

2

1 32.)

2      The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and
3 determined that she can perform light work except:

> [Plaintiff] can occasionally climb ramps and stairs but cannot climb ladders, ropes or scaffolds. She can frequently balance and can occasionally bend, stoop[,] crouch and kneel. Mentally, she cannot perform high-quota production-rate pace work or be responsible for the safety of others.

(AR at 33 (bold omitted).)

      The ALJ found, at step four, that Plaintiff has the ability to perform her past relevant work as a floor sales associate, administrative assistant and insurance salesperson. (AR at 40-41.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 29, 41.)

      Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 17-19, 22.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

      This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

*amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Three disputed issues are presented for decision here:

1. whether the ALJ properly evaluated Plaintiff's RFC, (*see* Joint Stip. at 4-7, 10-12);

2. whether the ALJ properly evaluated the medical evidence, (*id.* at 12-16, 24-25); and

3. whether the ALJ properly assessed Plaintiff's credibility. (*Id.* at 25-31, 36-37.)

Under the circumstances here, the Court finds the issue of the ALJ's

evaluation of Plaintiff's credibility to be dispositive of this matter, and does not reach the remaining issues.

## V.
## **DISCUSSION AND ANALYSIS**

A. <u>Plaintiff's Credibility</u>

Plaintiff argues that the "ALJ failed to articulate legally sufficient reasons for rejecting [Plaintiff's] testimony." (Joint Stip. at 30.)

    1. <u>The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility</u>

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 29-41.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

    2. <u>The ALJ Improperly Rejected Plaintiff's Subjective Complaints</u>

The Court finds that the ALJ's reasons for discounting Plaintiff's credibility are not clear and convincing and/or are not supported by the record. Six reasons guide this determination.

First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a lack of objective medical evidence. (*See* AR at 34 (ALJ finding "assertion [of side effects] is not supported by the record" and "no support in the medical records"

regarding complaints of extreme fatigue), 35 ("The degree of [Plaintiff's] alleged pain and dysfunction is not supported by the objective evidence.").)  Plaintiff provided sufficient medical evidence of underlying impairments that are reasonably likely to cause the symptoms she described.  For instance:

1. MRI of the lumbar spine report, dated September 21, 2006, found "straightening of normal lordotic curvature," "a disk desiccation with suggestion of an annular fissure and 3mm broad-based posterior disk protrusion at L4-L5 level causing pressure over the anterior aspect of the thecal sac," "a 5mm broad-based posterior disk/endplate osteophyte complex at L5-S1 level indenting the anterior aspect of the thecal sac," and "mild narrowing of the right neural foramen and moderately significant narrowing of the left neural foramen."  (*Id.* at 483-84.)

2. Emergency room report, dated September 25, 2006, described Plaintiff is "complaining of low back pain."  (*Id.* at 480.)

3. A physical therapy treatment note, dated January 4, 2007, indicated Plaintiff is "describing pain of 10/10."  (*Id.* at 293.)

4. Operation report, dated May 25, 2007, reported Plaintiff suffers from a "[f]racture of the lateral fragment of the left patella with a step off small fragment, painful."  (*Id.* at 339-40.)

5. Treatment note, dated April 1, 2008, indicated Plaintiff "still has a lot of back and muscle pain" and "gets a lot of fatigue" and has "had a sleep walking side effect with the [A]mbien."  (*Id.* at 582.)

6. Treatment note, dated May 29, 2009, reported a diagnosis of fibromyalgia and noted Plaintiff's "muscles are chronically in pain."  (*Id.* at 561-63.)

7. Treatment note, dated June 29, 2009, reported that Plaintiff "continues to have lots of muscular pain and fatigue" and "feels very lethargic throughout the day."  (*Id.* at 592-94.)

8. Medical source statement completed by treating physician, dated July 8, 2009, identified that Plaintiff suffers from fibromyalgia and her symptoms include

1   "chronic fatigue" and "sleep difficult[ies]."  (*Id.* at 585-91.)

2   Because Plaintiff produced sufficient medical evidence of underlying impairments that are likely to cause back pain and other subjective symptoms, the ALJ erred to the extent he rejected Plaintiff's credibility based upon a lack of objective findings to support her allegations.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96-7P,[3] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ rejected Plaintiff's credibility because she "has a pecuniary interest in the outcome of the hearing or is otherwise motivated by secondary gain[.]"  (AR at 34.)  However, without more, a claimant's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of the claimant.  *See Ratto v. Sec'y, Dept. of Health & Human Servs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.").  On the other hand, an ALJ is

---

[3] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

not required to ignore evidence suggesting that the testimony of a claimant is motivated by financial reasons independent of any legitimate claim of entitlement to benefits. *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (holding that there was a "strong element of secondary gain in this case" justifying the ALJ's negative credibility finding where the claimant sued his employer only after private benefits were terminated and said he planned to work only until his lawsuit settled). The Court could not find, nor does the ALJ cite to any, support for the inference that Plaintiff had a specific pecuniary motive independent of any legitimate claim of entitlement which would undermine her credibility. Accordingly, the ALJ's rejection of Plaintiff's subjective complaints based on this reason is not supported by substantial evidence.

Third, the ALJ's discounting of Plaintiff's credibility because her "communications with her treating physicians have not always been solely for the purpose of treatment" is not a clear and convincing reason. (AR at 35.) The ALJ found Plaintiff's testimony that "she instructed her doctor to make sure he included in his report a specific comment about her 'trigger points' – a reference to an essential element in the diagnosis of fibromyalgia" undermined her credibility. (*Id.*; *see also id.* at 111 (Plaintiff stating, "I told [my treating physician] I needed a list of where the trigger points were for the Court").) However, the Court fails to see how Plaintiff's credibility is somehow diminished by requesting her treating physician David Perz, D.O. ("Dr. Perz") to clearly state her symptoms while completing a Medical Source Statement which was being submitted to the Social Security Administration, especially in light of the fact that Plaintiff carries the burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton*, 331 F.3d at 1040.

Fourth, the ALJ's rejection of Plaintiff's credibility based on her daily activities is not supported by substantial evidence. The ALJ found that

> [Plaintiff's] activities of daily living do not appear significantly limited. She dresses and bathes herself, runs errands, goes to the store, cooks, makes snacks and helps with household chores, but alleges that her children and parents help her with these activities. She drives her own car for transportation. She can leave home alone, handle her own cash, and pay her own bills.

(AR at 35 (citations omitted).) However, the ALJ's paraphrasing of Plaintiff's daily activities is not entirely accurate. *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."). For instance, Plaintiff explained that she drives "once a week, maybe if that" and that she has "good and bad days" which determine the amount of activity she can perform. (*Id.* at 75, 94-95.)

In any event, the ALJ fails to demonstrate how Plaintiff's ability to perform certain daily activities translates into an ability to work. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); *Reddick*, 157 F.3d at 722 (only if a plaintiff's level of activity is inconsistent with her alleged limitations will these activities have any bearing on claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Fifth, the ALJ disregarded Plaintiff's subjective complaints because she has improved with treatment. (AR at 36 (ALJ rejecting Plaintiff's credibility because

9

"there is indication in the record that she derives some benefit from fibromyalgia pain medication . . . and that an inferential electrical stimulator was helpful in reducing pain").) This reason is also not supported by substantial evidence. While Dr. Perz noted on May 29, 2009 that Plaintiff "has had some benefit from the fibromyalgia pain medicine," he also reported that she "is still hurting a lot in the legs and back." (*Id.* at 561.) Further, although a physical therapy treatment note indicated "Interferential Electrical Stimulation . . . has been helpful to pain reduction," this treatment note was dated January 8, 2007, months prior to Plaintiff fracturing her left kneecap in April of 2007. (*See id.* at 295, 424-29.) Moreover, subsequent to January of 2007, numerous treatment notes report Plaintiff continued to experience pain and she was not diagnosed with fibromyalgia until 2009. (*See, e.g., id.* at 561-84.)

Lastly, the ALJ "observed during the hearing [that Plaintiff sat] as much as 50 minutes at a time without changing positions," despite testimony that "the maximum amount of time that she is able to sit at one time is 15 minutes." (AR at 34.) The ALJ also found that "according to the testimony during the hearing, [Plaintiff] traveled by automobile to the hearing site; the trip lasted 45 minutes[] and . . . was non-stop" and he "observed [Plaintiff] throughout the hearing . . . [and she] appeared to be alert and did not appear to be drowsy or sleepy."[4/] (*Id.* at 34-35.) The Court concludes that the ALJ properly considered Plaintiff's demeanor during the hearing. However, an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, although they may form part of that

---

[4/] The Court notes that the hearing transcript reflects that, at least on one occasion, Plaintiff changed positions during the hearing by "leaning over the table" and she testified that she laid in the car on the drive to the hearing. (AR at 74-75 (Plaintiff's testimony that she "laid in the back of her [friend's] car" on the drive to the hearing), 96 (Plaintiff's testimony that she "can be like leaning over the table or a counter [which] is actually the best, next to laying flat").)

10

determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ's "observations of a claimant's functioning" at the hearing are permissible as part of the overall credibility assessment but "may not form the sole basis for discrediting a person's testimony").

## VI.
## **REMAND IS APPROPRIATE**

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's subjective complaints and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. In addition, the ALJ shall reassess the medical opinions in the record regarding Plaintiff's physical *and* mental impairments and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. If necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's limitations. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is

capable of performing.[5]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: March 6, 2012

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

---

[5] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Joint Stip. at 4-7, 10-16, 24-25.)

12